UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MID-CENTURY INSURANCE COMPANY,

Plaintiff,

v.

AMERICAN ECONOMY INSURANCE COMPANY,

Defendant.

C21-0402 TSZ

ORDER

THIS MATTER comes before the Court on cross-motions for summary judgment brought by plaintiff Mid-Century Insurance Company ("Mid-Century"), docket no. 17, and defendant American Economy Insurance Company ("American Economy"), docket no. 21.  Having reviewed the parties' briefs and supporting materials, the Court enters the following Order.

**Background**

Both Mid-Century and American Economy have issued insurance policies in which Tahn Associates LLC ("Tahn Associates") is either the named insured or an additional insured, respectively.  *See* Mid-Century Policies (2013–22), Exs. A–I to Gulley Decl. (docket nos. 20-1 & 20-2); American Economy Policies Nos. 02-BP-674849-5 (2012–13), 02-BP-674849-6 (2013–14), & 02-BP-674849-7 (2014–15), Exs. I–K to Parker Decl. (docket no. 18-1).  In November 2012, Tahn Associates purchased commercial real property located at 4701 Brooklyn Avenue Northeast in

ORDER - 1

Seattle, Washington.  Ex. A to Parker Decl. (docket no. 18-1).  Carson Cleaners Inc. ("Carson Cleaners") had previously operated a dry-cleaning business on the premises, and it continued to do so pursuant to leases with Tahn Associates executed in November and December 2012.  *See* Ex. B to Parker Decl. (docket no. 18-1); *see also* Ex. C to Parker Decl. (docket no. 18-1) (indicating that the dry-cleaning business began in the 1960s and that Carson Cleaners was administratively dissolved in July 2015).  As required by the leases, Carson Cleaners procured business liability insurance for itself and Tahn Associates; these policies were issued by American Economy for the period from December 2012 until February 2015.  *See* Exs. B & I–K to Parker Decl. (docket no. 18-1).

By letter dated April 16, 2019, the State of Washington Department of Ecology ("Ecology") notified Tahn Associates that, in connection with an environmental cleanup of the Chevron service station (the "Chevron Site") located at 4700 Brooklyn Avenue Northeast, i.e., across the street from the property owned by Tahn Associates, "dry cleaning chemicals in the form of halogenated volatile organic compounds (HVOCs)[1] were discovered in the southwestern portion of the [Chevron] property and along the perimeter of NE 47th Street."  Ex. C to Parker Decl. (docket no. 18-1 at 38).  Ecology further indicated that, given "the groundwater flow direction, these contaminates likely originated from the former dry cleaners."  *Id.*

---

[1] Historically, an HVOC known as perchloroethylene or perchloroethene ("PCE" or "Perc") was commonly used as a solvent in the dry-cleaning industry.  *See Seattle Times Co. v. LeatherCare, Inc.*, 337 F. Supp. 3d 999, 1011 (W.D. Wash. 2018).

ORDER - 2

1     Mid-Century began defending Tahn Associates, subject to a reservation of rights, in response to a claim tendered in September 2019. <u>See</u> LaFave Decl. at ¶ 4 & Ex. A (docket no. 19). By letter dated April 14, 2020, Tahn Associates also tendered an insurance claim to American Economy. <u>See</u> Ex. F to Parker Decl. (docket no. 18-1 at 53–54). By letter dated June 15, 2020, Resolute Management, Inc. ("Resolute"), the agent appointed to handle the claim at issue, advised that "American Economy will not indemnify nor participate in the defense of Tahn" Associates. <u>See</u> Ex. G to Parker Decl. (docket no. 18-1 at 125).

    In March 2021, Mid-Century commenced this action against American Economy, seeking (i) a declaratory judgment that American Economy has a duty to defend and indemnify Tahn Associates, and (ii) equitable contribution from American Economy for its "fair share of costs to defend and indemnify" Tahn Associates. <u>See</u> Compl. at ¶¶ 26, 30, & 33 (docket no. 1). In June 2021, American Economy filed a responsive pleading containing 35 affirmative defenses, as well as counterclaims seeking a declaratory judgment that it owes no duty to defend or indemnify. <u>See</u> Ans. (docket no. 7). In October 2021, the parties filed cross-motions seeking summary judgment relating solely to the duty to defend.

    In October 2022, this case was reassigned to the undersigned judge.

**Discussion**

    The parties agree that Washington law controls in this case. Washington courts construe insurance policies as a whole, giving the policy the "fair, reasonable, and sensible construction" that an average person purchasing insurance would. <u>Vision One,</u>

*LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 512, 276 P.3d 300 (2012); see also *Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d 130, 137, 26 P.3d 910 (2001).  Inclusionary clauses are liberally construed in favor of coverage, while exclusionary provisions are interpreted strictly against the insurer.  *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (summarizing Washington law).

The policies at issue offer business liability coverage for "damages because of 'bodily injury' [or] 'property damage' . . . to which [the] insurance applies," i.e., when "caused by an 'occurrence' that takes place in the 'coverage territory' . . . during the policy period."  *See*, *e.g.*, Ex. K to Parker Decl. (docket no. 18-1 at 490–91).  The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id.* (docket no. 18-1 at 506).  In denying coverage, American Economy relies on a pollution exclusion, which reads as follows:

> This insurance does not apply to . . . . "[b]odily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" . . . [a]t or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

*Id.* at § II.B.1.f.(1)(a) (docket no. 18-1 at 493–94).  This type of exclusion is known as an "absolute" pollution exclusion, as opposed to a "qualified" pollution exclusion.  *See Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 172, 110 P.3d 733 (2005).  A "qualified" pollution exclusion precludes coverage unless the release of pollutants was "sudden and accidental," whereas an "absolute" exclusion contains no similar exception.

ORDER - 4

1  *See id.*  In Washington, the applicability of an "absolute" pollution exclusion is assessed

2  by asking (i) whether the loss arises from a pollutant "acting as a 'pollutant,'" and, if so,

3  (ii) whether the "efficient proximate cause" of the loss was a covered peril.  *See* *Dolsen*

4  *Cos. v. Bedivere Ins. Co.*, 264 F. Supp. 3d 1083, 1089–95 (E.D. Wash. 2017); *see also*

5  *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171, 400 P.3d 1234 (2017); *Kent*

6  *Farms, Inc. v. Zurich Ins. Co.*, 140 Wn.2d 396, 998 P.2d 292 (2000).  If the answer to the

7  first question is "no," as in *Kent Farms*,[2] **or** if the answer to the second question is "yes,"

8  as in *Xia*,[3] then the "absolute" pollution exclusion does not bar coverage.

9         The parties do not dispute that the property damage at issue, i.e., contamination of

10  the soil and groundwater with HVOCs, stems from a pollutant acting as a pollutant.  *See*

11  Pl.'s Mot. at 13 (docket no. 17); Def.'s Mot. at 12 (docket no. 21).  The disagreement

12  between Mid-Century and American Economy involves the second prong of the

13  pollution-exclusion inquiry and how it should be interpreted in light of Washington law

14  governing an insurer's duty to defend.  Washington courts view the duty to defend as

---

[2] In *Kent Farms*, the Washington Supreme Court held that an absolute pollution exclusion did not apply with respect to personal injuries suffered by a deliveryman when diesel fuel back-flowed over him because the fuel was not acting as a "pollutant" at the time.  140 Wn.2d at 401 ("Gugenberger was not polluted by diesel fuel.  It struck him; it engulfed him; it choked him.  It did not pollute him. . . . [T]he fuel was not acting as a 'pollutant' when it struck him any more than it would have been acting as a 'pollutant' if it had been in a barrel that rolled over him, or if it had been lying quietly on the steps waiting to trip him.").

[3] In *Xia*, the Washington Supreme Court concluded that an insurer's reliance on an absolute pollution exclusion to refuse to defend its insured, which had negligently installed a hot water heater, resulting in an injury-producing discharge of carbon monoxide, constituted bad faith.  188 Wn.2d at 174–75.  The *Xia* Court reasoned that negligent installation of the hot water heater, which was the alleged "efficient proximate cause" of the personal injuries at issue, was a covered peril, and the insurer breached its duty to defend.  *Id.* at 187–90.

ORDER - 5

different from and broader than the duty to indemnify. *See Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010). Although the duty to indemnify arises "only if the policy *actually covers* the insured's liability," the duty to defend is triggered if the policy "*conceivably covers*" the allegations in the underlying complaint or similar document. *Id.* (emphasis in original); *see also Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 802, 329 P.3d 59 (2014). In evaluating whether the insurer owes a duty to defend, the Court must liberally construe the underlying complaint or similar document to determine whether the alleged facts could, if proven, impose liability on the insured that would be covered under the policy. *Expedia*, 180 Wn.2d at 802–03; *Am. Best Food*, 168 Wn.2d at 404–05 (citing *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 58 P.3d 276 (2002)).

The analysis must ordinarily be performed within the "eight corners" of the insurance contract and the underlying complaint or similar document, *see Xia*, 188 Wn.2d at 187 (indicating that, from the "eight corners" in the matter, the insurer "should have noted that a potential issue of efficient proximate cause existed"), but this rule has two exceptions: (i) if coverage is not obvious from the face of the complaint or similar document, but could exist, the insurer must investigate and give the insured the benefit of the doubt concerning the duty to defend; and (ii) if the allegations in the complaint or similar document are ambiguous or conflict with facts known to the insurer, facts outside the complaint or similar document may be considered. *Expedia*, 180 Wn.2d at 803–04. Extrinsic facts, however, may be used only to trigger the duty to defend; they may not be used to deny coverage. *Id.* at 804. If "any reasonable interpretation of the facts or the

ORDER - 6

1 law" could result in coverage, the insurer must defend.  *Am. Best Food*, 168 Wn.2d at

2 405.

3     Ecology's April 2019 notice to Tahn Associates indicates that HVOCs typically

4 used in dry-cleaning operations were discovered at the Chevron Site and that, pursuant to

5 Washington's Model Toxics Control Act ("MTCA"), Tahn Associates is a potentially

6 liable person ("PLP") because it owns the property suspected of being the source of the

7 contaminants.  Ecology's notice, however, offers no opinion or allegation concerning

8 how the HVOCs entered the soil or the groundwater.  *See* Ex. C to Parker Decl. (docket

9 no. 18-1 at 37–41).  Mid-Century argues that, absent information about the "efficient

10 proximate cause" of the property damage, American Economy owes a defense to Tahn

11 Associates because the contamination might have conceivably been the result of a

12 covered peril.[4]  American Economy contends that, because Ecology's notice does not

13 identify an act or peril that led to the pollution, "the efficient proximate cause analysis

14 does not *create* coverage."  Def.'s Mot. at 16–17 (docket no. 21) (emphasis added).  The

---

[4] American Economy asserts that, in an unrelated Snohomish County Superior Court case, Mid-Century's parent company, Farmers Insurance Exchange ("Farmers"), advocated for a contrary position.  *See* Def.'s Request for Judicial Notice (docket no. 28).  Like Mid-Century, however, Farmers defended its insureds, who had stored and distributed petroleum products and repaired vehicles on their property, subject to a reservation of rights.  *See id.* at Ex. A (docket no. 28-1 at 3–4).  Only after the underlying litigation between the insureds and their neighbor settled did Farmers seek resolution of the coverage dispute, *see id.* (docket no. 28-1 at 4), and the insureds did not oppose entry of summary judgment that Farmers owed no duty to indemnify in connection with remediation of the insureds' or adjacent properties, *see id.* at Ex. B (docket no. 28-2).  These state court filings do not support American Economy's accusation that Mid-Century is being "disingenuous" in this matter, Def.'s Resp. at 12 (docket no. 27), and Mid-Century is not somehow estopped from presenting views inconsistent with those of Farmers.  The Court finds unpersuasive the materials attached to American Economy's request for judicial notice, and Mid-Century's objections to the documents, docket no. 32, are stricken as moot.

ORDER - 7

1  Court disagrees with both parties and concludes that the cross-motions for summary
2  judgment were prematurely filed.
3       To establish liability pursuant to MTCA, Ecology is not required to establish the
4  mechanism via which an area was contaminated. <u>See</u> RCW 70A.305.040(1).  The owner
5  of a facility is "strictly liable . . . for all remedial action costs and for all natural resource
6  damages resulting from the releases or threatened releases of hazardous substances."
7  RCW 70A.305.040(1)(a)&(2).  Thus, neither Ecology's April 2019 notice nor the other
8  documents downloaded from Ecology's website, as to which American Economy asks
9  the Court to take judicial notice, <u>see</u> Def.'s Request for Judicial Notice (docket no. 23),[5]
10 offer any insight concerning how the property damage at issue occurred.
11      This case is therefore distinguishable from <u>Dolsen</u>, on which American Economy
12 heavily relies.  In <u>Dolsen</u>, the sources of the contamination were known:  "the over-
13 application of manure directly to the land and the inadvertent seepage of the manure form
14 the holding ponds." 264 F. Supp. 3d at 1094.  The <u>Dolsen</u> Court reasoned that the
15 application of manure fell "squarely" within the pollution exclusion, which barred
16 coverage for liability arising from the "discharge, dispersal, seepage, migration, release
17 or escape of pollutants." <u>Id.</u> at 1089 & 1094.  The <u>Dolsen</u> Court also rejected the
18 insured's theory that negligence in the construction of the holding ponds was a covered

---

[5] Mid-Century has objected as to two of the items from Ecology's website, both of which post-date Resolute's letter indicating that American Economy would not provide a defense for Tahn Associates.  <u>See</u> Pl.'s Obj. (docket no. 25).  Mid-Century's objection is OVERRULED.  The Court takes judicial notice of the Ecology records, Exs. G–L (docket nos. 23-1 – 23-6), but concludes that they do not support American Economy's motion for summary judgment.

ORDER - 8

peril; the policy excluded "seepage" from "any site or location used for the handling, storage, disposal, processing or treatment of waste," and manure qualifies as "waste." Id. at 1089–90 & 1094.  Notably, the Dolsen Court observed that the "efficient proximate cause" rule might have resulted in coverage if the contamination had been caused by an accident, as opposed to the use or storage of the pollutant, for example, if a tractor had collided with the barrier of the holding pond. Id. at 1094–95.

Unlike in Dolsen, the Court cannot here determine, as a matter of law, whether the pollution exclusions in the American Economy policies apply (i.e., whether or not the soil and groundwater contamination was the product of an occurrence or accident).  Thus, at this stage of the proceedings, American Economy is not entitled to judgment as a matter of law that the policies at issue do not "conceivably" cover the basis of liability or that a duty to defend is not owed.  See Fed. R. Civ. P. 56(a).  By the same token, however, Mid-Century is not entitled to judgment as a matter of law that the pollution exclusion does not apply or that a duty to defend is owed.  Mid-Century is merely speculating that the "efficient proximate cause" of the property damage is a covered peril.  The question of whether Mid-Century will be able to recover from American Economy some portion of the defense costs must await another day.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Both plaintiff's motion for partial summary judgment, docket no. 17, and defendant's motion for summary judgment, docket no. 21, are DENIED.

(2)     The parties are DIRECTED to meet and confer and file, within twenty-one (21) days of the date of this Order, a Joint Status Report setting forth a proposed trial date and related dates and deadlines.  The parties shall also address in the Joint Status Report whether this matter should be stayed pending further investigation or adjudicative action by Ecology, or until any remediation efforts are underway or completed, and, if so, how long the parties anticipate such stay would remain in effect.

(3)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 7th day of November, 2022.

Thomas S. Zilly
United States District Judge

ORDER - 10